**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                           )
TAMMIE GARVIN, et al.,                     )
                                           )
          Plaintiffs,                      )
                                           )
     v.                                    )    Civil Action No. 11-383 (RBW)
                                           )
GOVERNMENT OF THE DISTRICT OF              )
COLUMBIA,                                  )
                                           )
          Defendant.                       )
_____)

**MEMORANDUM OPINION**

The plaintiffs, Tammie Garvin and her minor child, A.G., bring this action on behalf of

A.G., against the District of Columbia government seeking "outstanding . . . attorney's fees and

costs [allegedly] owed to [the p]laintiffs in the amount of '$5,822.17," Complaint ("Compl.") ¶

11, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-

1491 (2006), Compl. ¶ 1.[1]  Currently before this Court is the Plaintiffs' Motion for Summary

Judgment ("Pls.' Mot.").  After carefully considering the plaintiffs' complaint, the motion, the

defendant's opposition to the motion, and the memoranda of law and exhibits submitted in

conjunction with those filings,[2] the Court concludes that it must grant in part and deny in part the

plaintiffs' motion.

---

[1] The IDEA was subsequently amended by the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. 108-446, 118 Stat. 2647.  The plaintiffs' cite these iterations of the statute separately, but all references to the IDEA in this opinion are inclusive of these amendments.

[2] In addition to the plaintiffs' complaint and the parties' cross-motions for summary judgment, the Court considered the following documents in reaching its decision: (1) the plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem."); (2) the Plaintiffs' Statement of Material Facts (. . . continued)

# I. BACKGROUND

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  A free appropriate public education entitles "each child with a disability" to an "individualized education program" that is tailored to meet his or her unique needs.  20 U.S.C. §§ 1414(d)(1)(A)-(2)(A).  Furthermore, the IDEA authorizes courts to grant attorneys' fees to the prevailing party, pursuant to section 1415(i).  20 U.S.C. § 1415(i)(3).

The following facts are undisputed unless indicated otherwise.  A.G. "suffers from a diagnosed disability such that A.G. requires special education services pursuant to the [IDEA]." Memorandum of Point and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem.") at 1-2.[3]  On May 5, 2009, the plaintiffs filed a complaint with the District of Columbia Office of the State Superintendent of Education, Office of Compliance & Review, State Enforcement & Investigation Division, Student Hearing Office "alleging that the [District of Columbia Public Schools were] den[ying]" A.G. a free appropriate public education "by failing and refusing to include one-on-one home tutoring services as part of [A.G.'s individualized education program ("IEP")], and by deferring the decision refusing to provide the

---

(. . . continued)
As to Which There is No Dispute ("Pls.' Stmt."); (3) the defendant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Opp'n"); (4) the Defendant's Response to Plaintiffs' Statement of Material Facts ("Def.'s Resp.") and (5) the Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Reply").

[3] The plaintiffs failed to number the pages of the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment; therefore, the Court has taken the liberty of assigning page numbers to the
(. . . continued)

tutoring to a [District of Columbia Public Schools] employee who was not part of the student's IEP team and who did not participate in the IEP meeting."   Pls.' Mem, Exhibit ("Ex.") 1 (Hearing Officer's Determination) at 3.[4]   "On June 9, 2009[,] pursuant to IDEA, an administrative due process hearing was held concerning the special education needs of A.G." Plaintiffs' Statement of Material Facts as to Which There is No Dispute ("Pls.' Stmt.") ¶ 3; Defendant's Response to Plaintiffs' Statement of Material Facts ("Def.'s Stmt.") ¶ 3.   The plaintiffs were the prevailing party in the administrative hearing.  Pls.' Stmt. ¶ 4; Def.'s Stmt. ¶ 4.  Beginning "[o]n July 14, 2009, pursuant to IDEA, a petition for attorney's fees and costs was submitted to D.C. Public Schools," Pls.' Stmt. ¶ 5; Def.'s Stmt. ¶ 5,  through the submission of various invoices up to and including September 21, 2010, Pls.' Stmt. ¶¶ 5-13.   Some of the amounts in the various invoices submitted for payment were paid by D.C. Public Schools, Pls.' Stmt. ¶¶ 5-13; Def.'s Stmt. ¶¶ 5-13, however, as of the date of the filing of the Complaint in this case on February 15, 2011, the plaintiffs assert that there remains an outstanding balance of attorney's fees equaling "$5,822.17," Pls.' Stmt. ¶ 15.   The defendant asserts that the total fees requested by the plaintiffs' invoices is unreasonable, Def.'s Stmt. ¶ 14, and "should be reduced by $4,652.09," Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Opp'n") at 2.

---

(. . . continued)
memorandum consistent with the Court's electronic filing system.

[4] The plaintiffs also failed to number the pages of the Hearing Officer's Determination; therefore, the Court has again taken the liberty of assigning page numbers to the Determination consistent with the Court's electronic filing system.

## II. LEGAL STANDARDS

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 317-18 (1986).

Under the IDEA, a federal district court has the authority to "award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i).  "A court's determination of the appropriate attorney's fees . . . is based on a two-step inquiry."  Jackson v. Dist. of Columbia, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).  Initially, in a case in which a party is seeking attorneys' fees under the IDEA, a district court must determine if the party is the prevailing party, and next, the court must "determine whether the attorney's fees sought are reasonable."  Id.  In general, a "reasonable" attorneys' fee is determined by the reasonable number of hours expended multiplied by a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.");  see also Nat'l Ass'n of Concerned Veterans

v. Sec'y of Def., 675 F.2d 1319, 1324 (D.C. Cir. 1982) (stating that "the key issue in establishing" a reasonable attorneys' fee "is to determine the reasonable hourly rate prevailing in the community for similar work" (internal quotation marks and citation omitted)).

Importantly, the plaintiff bears the burden of demonstrating that both the hourly rate and the number of hours spent on particular tasks are reasonable.  In re North, 59 F.3d 184, 189 (D.C. Cir. 1995).  A plaintiff can show that an hourly rate is reasonable by "submit[ting] evidence on at least three fronts: 'the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'"  Jackson, 696 F. Supp. 2d at 101 (quoting Covington v. Dist. of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995)).  Finally, a plaintiff can establish the reasonableness of the hours spent on a matter by submitting an invoice that is "sufficiently detailed to permit the District Court to make an independent determination [of] whether or not the hours claimed are justified."  Nat'l Ass'n of Concerned Veterans, 675 F.2d at 1327).

### III. LEGAL ANALYSIS

The defendant does not contest that the plaintiffs are "prevailing parties" within the meaning of § 1415(i)(3)(B); thus, they are entitled to reasonable attorney's fees under the statute, but the defendant  objects to the plaintiffs' counsel's hourly billing rates.  Def.'s Opp'n at 4.  The defendant also objects to the reasonableness of many of the specific charges.  Finally, the defendant argues that the plaintiff is not entitled to an award of prejudgment interest.

A.      Were the Hourly Rates Charged Reasonable ?

The plaintiffs' counsel seeks compensation "at an hourly rate of $400.00 for work performed through December 31, 2009[,] and at the hourly rate of $450.00 for work performed from January 1, 2010[,] to the present."  Pls.' Mem. at 5.  Additionally, the plaintiffs seek

"compensation . . . for paralegal staff [of their attorney] at the rate of $125.00 per hour." Id. The

plaintiffs rely on the fee matrix outlined in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354,

371-72 (D.D.C. 1983), to support the argument that their counsel's fees are reasonable. Pls.'

Mem. at 6. The defendant counters that "[i]n their attempt to justify Laffey rates, [the p]laintiffs

are comparing 'apples to oranges'—that of the community of special education attorneys to the

community of attorneys for whom the Laffey Matrix was devised." Def.'s Opp'n at 4-5. The

defendant further states:

> The prevailing rates for attorneys practicing special education litigation is not
> measured by the Laffey Matrix. Rather, the Laffey Matrix – now a tabulation
> periodically updated by the United States Attorney's Office for the District of
> Columbia showing prevailing attorneys' hourly rates for complex federal
> litigation in the District of Columbia – grew out of the court's decision in Laffey .
> . . . "The matrix creates one axis for a lawyer's years of experience in complicated
> federal litigation and a second for rates of compensation." Griffin v. Wash.
> Convention Ctr., 172 F. Supp. 2d 193, 197 (D.D.C. 2001).
>    The Matrix is not ipso facto determinative of the proper hourly rate in this
> case, and simple citation to the Matrix does not provide the required support for
> the hourly rate claimed.

Id. at 5. The defendant contends that "when IDEA hearings are uncomplicated, as they are here,

courts have held the Matrix inapplicable." Id. at 6. In reply, the plaintiffs argue that the

underlying litigation consisted of a "complicated, complex hearing which required knowledge of

the procedural rules, the substantive rules and, more importantly, a working knowledge of

educational issues and the factors underlying/comprising A.G.'s disabilities and how they could

best be addressed via tutoring so that [the p]laintiff would be provided" the necessary services to

successfully "access the educational curriculum." Plaintiffs' Reply to Defendant's Opposition to

Plaintiffs' Motion for Summary Judgment ("Pls.' Reply") at 4.[5]

---

[5] Again, the plaintiffs have failed to number the pages of their reply; therefore, the Court has taken the liberty of
assigning page numbers to the reply consistent with the Court's electronic filing system.

A number of the Court's colleagues have had to address the issue of appropriate attorneys' fees in IDEA cases, most recently Judges Gladys Kessler, see Cox v. Dist. of Columbia, 754 F. Supp. 2d 66 (D.D.C. 2010), and Ricardo M. Urbina, see Jackson, 696 F. Supp. 2d 97 (D.D.C. 2010).  Those judges have on numerous occasions rejected the very arguments that the defendant is now making before this Court. See Cox, 754 F. Supp. 2d at 75-76 ("'[N]umerous judges in this district have applied Laffey rates in the context of fee awards arising out of IDEA administrative proceedings.'" (quoting Jackson, 696 F. Supp. 2d at 102)).[6] Although the defendant relies on Agapito v. Dist. of Columbia, 525 F. Supp. 2d 150 (D.D.C. 2007), to show that application of the Laffey Matrix has been rejected in uncomplicated IDEA cases, Def's Opp'n at 6, in Jackson, Judge Urbina concluded that Agapito, a case which adopted the D.C. Public School's guidelines, not only has "no binding effect on this court, [but is] contrary to the weight of precedent and declined to address the decisions listed above, with which [it is] in conflict," Jackson, 696 F. Supp. 2d at 102.  This Court agrees with Judge Urbina's position.  That is not to say that this Court believes that all requests for attorney's fees under the IDEA should be assessed under the Laffey Matrix.

In this case, however, the Court is also perplexed by the defendant's assertion that the underlying litigation was not complex, in light of the following explanation the plaintiffs provided to demonstrate the complicated nature of the underlying action:

> Plaintiffs' claim arises from a matter that was concluded by means of a hearing officer's determination after a lengthy and contested hearing.

---

[6] The court in Cox cites to several other cases in this district in which the judges applied the Laffey Matrix in IDEA cases: "Kaseman v. Dist. of Columbia, 329 F. Supp. 2d 20, 25-26 (D.D.C. 2004) (Huvelle, J.); Brown v. Jordan P.C.S., 539 F. Supp. 2d 436, 438 (D.D.C. 2008) (Leon, J.); Bush ex rel. A.H. v. Dist. of Columbia, 579 F. Supp. 2d 22, 27 (D.D.C. 2008) (Urbina, J.); Abraham v. Dist. of Columbia, 338 F. Supp. 2d 113, 124 (D.D.C. Collyer, J.); Nesbit v. Dist. of Columbia, Civ. No. 01-2429, at 1 (D.D.C. Nov. 4, 2003) (Order) (Kessler, J.))." Cox, 754 F. Supp. 2d at 75-76.

***

Plaintiff A.G.'s administrative hearing involved 11 exhibits totaling over 70
pages.  The exhibits included reports from two psychological evaluations, report
cards, behavior intervention plans, etc. D.C. Public Schools offered 2 exhibits
totaling approximately 17 pages.  D.C. Public Schools filed a detailed Answer.  A
prehearing conference was held and the hearing officer issued a 4 page pre-
hearing order.

Plaintiffs listed 15 witnesses and D.C. Public Schools disclosed 14
witnesses to testify at the hearing.  These witnesses included a speech/language
pathologist, psychologist, teachers, therapists, 3 DCPS supervisors, IEP
coordinator and the DCPS director of special education.  Whether they ultimately
testified at the hearing or not, undersigned counsel needed to be prepared to
respond to each and every witness listed by D.C. Public Schools.  The hearing
lasted virtually a full day.  Each party filed lengthy written closing arguments.
The hearing officer subsequently issued a 12 page single spaced decision
awarding [the] petitioner the relief being sought.

***

Due to the extensive prehearing preparation, undersigned counsel was familiar
with and conversant in every portion of the exhibits set forth above, including a
working knowledge of how to read and interpret the reports from evaluations
from a variety of disciplines and tie all of that into the educational issues A.G.
presented with and the appropriate way to address th[ose] issues.

Pls.' Mem. at 3-4.  This Court agrees with the plaintiffs that the underlying litigation was

complex and that the <u>Laffey</u> Matrix is an appropriate measure for attorneys' fees in this matter.

<u>See</u> <u>Cox</u>, 754 F. Supp. 2d at 75-76 (finding that the <u>Laffey</u> Matrix is appropriate in part because

"in order to handle special education cases effectively, . . . it is essential that counsel understand

the bureaucratic workings of [the D.C. Public School] system [and] know competent and caring

individuals in that system who can break logjams and obtain necessary evaluations, reports, and

materials").

1.      The Fees Requested by the Plaintiffs' Counsel

As noted earlier, the plaintiffs' seek compensation for their attorney in the amount of

"$400.00 for work performed through December 31, 2009[,] and at the hourly rate of $450.00 for

work performed from January 1, 2010[,] to the present."  Pls.' Mem. at 5.  An examination of the

<u>Laffey</u> Matrix shows that the hourly rate for work performed by attorneys with more than twenty

years of experience in 2009-2010 was $465.00, and for 2010-2011 it was $475.00.  Laffey

Matrix – 2003-2012, United States Department of Justice, U.S. Attorney's Office for the District

of Columbia, http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf.

The plaintiffs' counsel's rates fall below the hourly Laffey rates for the periods between 2009

and 2010, id., and the plaintiffs' attorney has "amply demonstrated [that her] experience and

reputation" merit the hourly rate requested,[7] Cox, 754 F. Supp. 2d at 76.

### 2.      The Fee Requested for the Plaintiffs' Counsel's Paralegal

The plaintiffs also seek "compensation . . . for paralegal staff [of their counsel] at the rate

of $125.00 per hour."  Pls.' Mem. at 5.  The plaintiffs' state that "[p]aralegal Mery Williams has

formal paralegal training and over eighteen years of experience as a full-time paralegal."  Pls.'

Mem. at 8.  The rate of compensation being sought by the plaintiffs for their counsel's paralegal

also falls below the paralegal rate designated under the Laffey Matrix.  The paralegal's

---

[7] The plaintiffs submitted a declaration of Elizabeth T. Jester, plaintiffs' counsel, detailing counsel's qualifications:

   I am a 1980 graduate of Catholic University School of Law . . . [and s]ince entering private practice in 1987, my focus has been primarily on children's right's issues . . . .

   I am . . . on the D.C. Superior Court Family Division panel of attorneys approved to accept Special Education Attorney appointments and have been on this panel since its inception. I have been an instructor at CLE courses sponsored by D.C. Superior Court and the Public Defender Service for the District of Columbia concerning special education issues. I was a presenter at a seminar concerning both attorney's fees in special education cases and federal court litigation in IDEA cases at the 2010 BADC 21st Annual Neglect and Delinquency Practice Institute[,] which was held at The University of the District of Columbia during March 2010. I was a presenter at the 2011 BADC 22nd Annual Neglect and Delinquency Practice Institute which was held at The University of District of Columbia in March 2011 on the topic of how to conduct due process hearings pursuant to IDEA. I participated as an instructor for the annual training program conducted by the D.C. Public Defender Service in March 2010 and June 2011 for new special education attorneys who have recently been added to the D.C. Superior Court CCAN panel. . . .

   I have represented hundreds of District of Columbia families in ascertaining the educational needs of their children with disabilities and procuring appropriate placements. My special education practice is limited to matters arising in the District of Columbia. I have participated in hundreds of administrative due process hearings pursuant to IDEA and procured dozens of settlement agreements in IDEA cases in the District of Columbia.

Pls.' Mem., Declaration of Elizabeth T. Jester, ¶¶ 5-6.

experience, coupled with the fact that her rate is below the <u>Laffey</u> Matrix rate for paralegals leads this Court to conclude that the fees charged for her services are reasonable.  Furthermore, the Court is persuaded by plaintiffs' argument that "the work delegated to [the paralegal] was necessary to the litigation and would need to be performed by [the attorney] at a much greater cost if paralegal services were not available."  <u>Id.</u>

      B.    <u>Were Plaintiffs' Counsel's Specific Charges Reasonable?</u>

The defendant next argues that the "[p]laintiffs fail to demonstrate the reasonableness of certain charges in that they are for non-professional services, or for non-reimbursable costs."  Def.'s Opp'n at 13.  Specifically, the defendant maintains the following: (1) that the "IDEA does not give [the p]laintiffs the right to recoup . . . clerical costs," <u>id.</u> at 14; (2) the "[p]laintiffs counsel has impermissibly billed for travel time to attend administrative hearings and IEP meetings, which is not compensable," <u>id.</u>; and (3) the "[p]laintiffs' counsel has also incurred faxing and photocopying expenses," which are either disallowed under DCPS guidelines or should be reduced consistent with those guidelines, <u>id.</u> at 15.

In opposition, the plaintiffs assert that "caselaw in the District of Columbia provides that attorneys may be compensated for tasks necessary to representing the client, including tasks that may be perceived as clerical in nature."  Pls.' Reply at 12 (citing <u>Bailey v. Dist. of Columbia</u>, 839 F. Supp. 888 (D.D.C. 1993)).  Furthermore, the plaintiffs assert that the "[p]laintiffs' costs are costs that are actually incurred," and that "the mileage rate and photocopying rate utilized by [the p]laintiffs are the rates approved by the federal government."  <u>Id.</u> at 13.  This Court finds that the rates charged for the disputed services are reasonable, <u>Sexcius v. Dist. of Columbia</u>, 839 F. Supp. 919, 927 (D.D.C. 1993) ("Reasonable photocopying, postage, long distance telephone, messenger, and transportation and parking costs are customarily considered part of a reasonable

'attorney's fee.'"); <u>Holbrook v. Dist. of Columbia</u>, 305 F. Supp. 2d 41, 46 (D.D.C. 2004), and

that these services were necessary for the legal representation provided to the plaintiffs, <u>Bailey</u>

839 F. Supp. at 891.

      C.      <u>Are the Plaintiffs Entitled to Prejudgment Interest?</u>

The plaintiffs request that the Court grant them prejudgment interest pursuant to D.C.

Code § 15-108 (2012), which allows for prejudgment interest when a lawsuit relates to enforcing

"a liquidated debt on which interest is payable by contract or by law or by usage." Pls.' Mem. at

10. The plaintiff notes that the purpose of prejudgment interest is to "compensate the creditor for

the loss of use of its money." <u>Id.</u> (internal quotation marks and citation omitted). The defendant

counters, arguing that prejudgment interest is a matter completely within the discretion of the

court and is awardable based on principles of equity. Def.'s Opp'n at 15. Furthermore, the

defendant claims that "[t]he purpose of such awards is to compensate the plaintiff for any delay

in payment resulting from the litigation." <u>Id.</u> The defendant contends that in this case, once the

D.C. Public Schools received the invoices, it "assessed the reasonableness of the fees requested,

and promptly remitted payment to" the plaintiffs' counsel. <u>Id.</u> The defendant therefore contends

that the "[p]laintiffs have simply failed to set forth any basis for an entitlement to prejudgment

interest." <u>Id.</u>

The Court agrees with the defendant. Based on the facts of this case, the defendant did

not seek to deny the plaintiffs recovery of their attorney's fees, but instead disagreed as to the

appropriate amount of compensation. In other words, at no point did the defendant blatantly

deny the plaintiffs' counsel compensation. Instead, the invoices were paid promptly with certain

adjustments based on the defendant's belief that the fees were unreasonable. The Court therefore

finds that principles of equity do not entitle the plaintiff to prejudgment interest. <u>See Wright v.</u>

<u>Dist. of Columbia</u>, Civ. No. 11-0384, 2012 WL 79015 at *5 (D.D.C. Jan. 11, 2012).  <u>Cf.</u> <u>Kaseman v. Dist. of Columbia</u>, 329 F. Supp. 2d 20, 28 (D.D.C. 2004) (holding that prejudgment interest was appropriate in equity where the defendant had "stonewalled requests for payment").

## IV. CONCLUSION

Based on the foregoing reasons, the plaintiffs' motion for summary judgment is granted in part and denied in part.

**SO ORDERED**.[8]

_____/s/_____
REGGIE B. WALTON
United States District Judge

---

[8] An Order is being issued contemporaneously with this Opinion.